PHILIP HUTT, Respondent, *v.* SAMUEL HAUSMAN and HARRY GRUSHEWSKY, Copartners Doing Business under the Firm Name and Style of HAUSMAN & GRUSHEWSKY, Appellants.

Supreme Court, Appellate Term, First Department, December, 1921, Term — Filed April, 1922.

Sales — anticipatory breach of contract of sale by vendee — pleading — complaint — seller must allege notice of his election to rescind — Pers. Prop. Law, § 146.

Where prior to the time fixed for the performance of a contract of sale and purchase, the vendee repudiates and refuses performance on his part, the seller in an action for damages alleged to have been sustained in respect to the undelivered portion of an entire order for goods, to be entitled to recover must allege and prove that he gave notice of his election to rescind the contract, as required by section 146 of the Personal Property Law, and the omission to plead the giving of such notice renders the complaint defective.

*Rubber Trading Co.* v. *Manhattan Rubber Mfg. Co.,* 221 N. Y. 120, followed.

The trial justice held that the complaint was good and that a defense pleaded was bad. *Held,* that an order denying defendant's motion for judgment on the pleadings will be reversed and the motion granted with leave to plaintiff to plead over and that an order granting plaintiff's motion to sustain his demurrer to the defense pleaded will be reversed.

APPEAL by defendants from an order of the City Court of the city of New York sustaining the demurrer interposed by plaintiff to the first defense set forth in the amended answer of the defendants, and from an order denying defendants' cross-motion for judgment on the pleadings.

*James S. Kleinman* (*Isidor Enselman,* of counsel), for appellants.

*Joseph Schultz,* for respondent.

MULLAN, J. After plaintiff had demurred to a defense, both sides moved for judgment on the pleadings. The learned trial justice held that the complaint was good, and that the defense

was bad. If I be right in my view that the complaint is bad, it will be unnecessary to discuss the defense.

As the complaint, as drawn, was ambiguous, and left in doubt whether the pleader intended to rely upon an anticipatory breach, or upon full performance except for a waived tender of delivery, plaintiff's counsel, at our request, by informal written stipulation that is to be deemed a part of his brief and binding construction of his pleading, has removed the ambiguity and declared unequivocally upon an anticipatory breach.

On April 20, 1920, the plaintiff and defendants agreed in writing, the former to sell, and the latter to buy, nineteen cases of turkish towels, at agreed prices, to be delivered in May, June and July, 1920. At the time the contract was made five cases of towels were delivered to and physically received by the defendants. On May 6, 1920, the defendants notified plaintiff " that they would not accept said goods (the entire order being here referred to) or pay therefor, or carry out the terms of said contract on their part." On November 3, 1920, plaintiff brought suit in the City Court against the defendants for the " agreed price and reasonable value " of the five cases of towels delivered to defendants before their repudiation. That action resulted in a judgment for the plaintiff. The plaintiff, continues the pleader, would at all material times have been ready and willing to perform " but for the defendants' aforesaid cancellation, notification, and refusal." The present action is for damages, in respect of the fourteen undelivered cases of towels, caused plaintiff by defendants' breach by means of their repudiation and refusal to perform, prior to the time fixed for performance in the contract.

Two objections to the complaint are urged by defendants. The first is that the contract is entire, and that the City Court action and its result barred any further claim upon or under it. That objection would seem (*Pakas* v. *Hollingshead*, 184 N. Y. 211) to be well taken, but we are met by two cases in this court which appear to sustain plaintiff's contention that he may thus split his claim. *Rusch* v. *Klausner*, 117 N. Y. Supp. 1074; *Peruvian Panama Hat Co.* v. *Marcus*, 164 id. 821. We prefer, therefore, to pass on to less debatable ground, and so I shall proceed to consider the second objection of the defendants, which is, that the complaint should have contained an allegation that plaintiff, upon being advised by defendants that they would not perform, gave defendants the notice required by section 146 of the Personal Property Law. That section reads: " When seller may rescind contract or sale. Where the goods have not been delivered to

the buyer, and the buyer has repudiated the contract to sell or sale, or has manifested his inability to perform his obligations thereunder, or has committed a material breach thereof, the seller may totally rescind the contract or the sale by giving notice of his election so to do to the buyer."

On behalf of plaintiff it is contended that the statutory provisions quoted refer only to such a true rescission by the seller as would result in the complete abandonment of the contract, leaving the parties in the same legal situation as if the agreement had never been made. On behalf of defendants it is contended that the statute was intended to refer to such a case as this, where the injured and innocent seller desires to elect not merely not to go farther toward performance, but also to save his right to hold the breaching buyer for damages sustainable from that breach. The argument for plaintiff is, thus, that he was not required to give any notice; while the argument for defendants is that plaintiff cannot recover without proving and, therefore, pleading that such a notice was given.

In so far as concerns the need of a notice, the case is treated on both sides, and properly, I think, as if it were on the same footing with one wherein no delivery of any part of the goods had been made; and the matter of notice is discussed as if we were dealing with the simple question whether a seller, to take advantage of an anticipatory breach in order to sue the buyer for damages, must give the notice referred to in section 146.

If the situation were unaffected by section 146 of the Personal Property Law, the plaintiff, upon his receipt of defendants' notification that they would not perform, could have done one of three things: 1st. He could have ignored the notification and proceeded to perform, in which case he would have been under the duty of being in readiness to deliver the goods at the agreed times, nothing being excused of him but the actual tender that was, in effect, waived by the defendants' notification. 2d. He could have at once ceased performing, in which case he could have sued at once, or at any time before the Statute of Limitations should run against him, for damages due to the anticipatory breach (the *quantum* of damage being affected in certain cases by the stage of performance reached at the time of the anticipatory breach). Pers. Prop. Law, § 145, subd. 4. 3d. He could have rescinded, *i. e.*, he could have treated the contract as if it had been canceled, or as if it had never been made; in which case he would have been under no duty of giving any notice to the defendants.

What then, if anything, did section 146 of the Personal Property Law add to the plaintiff's rights or duties? Professor Williston

(Williston Sales, p. 979) says, in discussing section 65 of the Uniform Sales Act, which is identical with section 146 of the Personal Property Law, that the section was drafted for the purpose of allowing an injured seller to rescind in the strict technical sense, *i. e.*, to declare the contract wholly at an end for all purposes, in which case, of course, the seller could not sue the buyer upon any theory upon or under the contract (although he could sue in *quasi* contract for the value of goods that had already been delivered). The learned author, after observing that " Though it will generally be more favorable for a seller, if the buyer makes default, not to rescind the contract, but merely to rely on his own excuse for not performing, and sue the buyer for his default on the contract, the seller has the right· if he so desires to rescind the contract altogether," proceeds to state his view that the section in question was designed to accomplish the object of permitting such a complete or true rescission upon the condition that the rescinding seller give the notice prescribed. It would appear, from Professor Williston's treatise, that the apparently tautological phrase " totally rescind " was adopted advertently to prevent the possible construction that what was intended was the " rescission " sometimes loosely used to describe the attitude of a seller who desists from continued performance but who desires to hold the defaulting buyer for damages due to his breach. If any further confirmation were needed of the author's view that the section refers only to the complete wiping out of the contract, it is furnished by the note at the foot of page 924 of his work on Sales, in which he says: " section 65, which relates to the rescission of all obligations between buyer and seller."

Without commenting upon the possible value of the section, under Professor Williston's construction of it, in respect of total rescission for the reasons given in the section other than that of repudiation, I am unable clearly to see how, in respect of repudiation, the section has, under that construction, any practical meaning. The injured seller, in such a case, would be doing a seemingly idle thing in giving a notice that he intends to call the contract off. As a practical matter, he need do nothing at all, for he is amply protected by that fundamental rule of the law of contract that prevents a defaulting party from recovering against the other party. In so far, then, as concerns a seller who receives an unequivocal repudiation, the section would seem to mean something else than that the seller must give a notice that if the buyer sues him, the seller will avail of his right to defeat the buyer by relying upon the buyer's own default. Statutes are to be construed as practical rules of conduct. What, then, does the statute mean,

in so far as it relates to repudiation? It can possibly refer to the two kinds of attitudes an injured seller may take when the buyer repudiates, namely, the common-law right to ignore the repudiation, and the common-law right to accept the repudiation for the purpose of desisting from further performance while withholding a right to sue the buyer for damages. It is unnecessary to express an opinion as to whether the statute should be held to relate to the former of these two attitudes, as we are here concerned only with the latter attitude, that of stopping performance, but holding the buyer for the loss caused by his repudiation. While the doctrine of anticipatory breach does not give the offending buyer the *locus penitentiæ* that he necessarily has where the seller elects to ignore the repudiation, at least it must often be helpful to such a buyer to know in advance that the seller intends to hold him for damages, instead of being content to regard the business as over and done with. I am of the opinion, therefore, that apart from adjudications binding upon us, we should construe section 146 as requiring the plaintiff seller to notify the buyer of the seller's intention (here, concededly, by the stipulation, present) not merely not to go forward but also to hold the buyer for damages. The question is not, however, as I read the opinion in *Rubber Trading Co.* v. *Manhattan R. Mfg. Co.*, 221 N. Y. 120, a new one. There, as here, the controversy was over the right of a seller to rely upon the repudiation of a buyer as excuse for not going forward; and there, as here, the seller sued for damages because of the repudiation. The buyer, in the *Rubber* case, insisted upon a right of inspection that was assumed, by the Court of Appeals, to be unwarranted. The buyer's position in that regard was held to be a repudiation. The inquiry as to whether the seller, who was the plaintiff, could sue for an anticipatory breach, was not carried farther for the stated reason that in no event could the seller recover upon that theory because of its failure to give the notice prescribed in section 146. "But even though," says Judge Cardozo, "the defendant was at fault, the contract, none the less, survived unless the plaintiff gave notice of an election to treat it as abandoned (Sales of Goods Act, § 146, L. 1911, ch. 571; Consol. Laws, ch. 41). * * * Still less is there any hint that because of the buyer's wrong, the seller has chosen to treat the contract as abandoned. The statute says that the seller must give notice of his election (Sales of Goods Act, § 146). ' * * * The plaintiff did not rescind for the defendant's anticipatory breach. * * * It chose to keep the contract alive in spite of anything that had gone before." The remainder of the opinion is devoted to a showing that the judgment in favor of the plaintiff

seller was not sustainable on the other theory upon which the plaintiff in part relied, that of complete performance, for the reason that it insisted upon the right to make a tender that was not a proper tender under the agreement.

It seems to me to be very plain that the precise point we are dealing with here was necessarily disposed of in the *Rubber* case. It is suggested that if the point were involved at all, the treatment of it was by way of *dictum*. Even were that the case, I should be inclined to consider a *dictum* from such a source binding upon us in the absence of precise adjudication by the same court to the contrary. But I think my short summary shows that the question was squarely raised, and necessarily decided. It must be obvious that Judge Cardozo, in using the terms " abandoned " and " rescinded," did not mean to refer to the complete abandonment for all purposes which, as I have pointed out, was the intention ascribed to section 146 by Professor Williston. There was no question of complete abandonment in the case. The plaintiff was relying upon the right it would have had at common law to cease performance, and sue for damages due to an anticipatory breach. It is, therefore, quite apparent that the Court of Appeals has taken a different view of the section from that entertained by Professor Williston; and that, in this state, at least, a seller who wishes to elect to desist from performance and yet hold the buyer for damages, must, upon repudiation by the buyer, notify the buyer of the seller's election so to hold him. As no notice of election is pleaded here, I am of the opinion that the complaint is defective.

Order denying defendants' motion for judgment on the pleadings reversed, with ten dollars costs, and motion granted, with ten dollars costs, with leave to plaintiff to plead over within six days on payment of costs. Order granting plaintiff's motion to sustain demurrer reversed, without costs, and motion denied, without costs.

GAVEGAN, J. (concurring). With some hesitation, and even reluctance, I have concluded that Mr. Justice Mullan is correct in his view of section 65 of the Uniform Sales Act, the section designated in New York as section 146 of the Personal Property Law.

The draftsman of the act, Professor Williston, points out that this section is new, in the sense that no such section is found in the English statute; and also that it in express terms relates to a *total* rescission. It appears to be his view that the words " totally rescind " clearly refer, not to a termination or annulment, so far as performance may be required of the party offended by the

other's breach, with a reservation of the right to recover the damages resulting from such breach, but to refer to a true rescission.

References in our appellate courts to this section, however, are such as to show that it has not been there regarded as referring to a true rescission. The interpretation to the effect that it does not relate to a true rescission leaves no meaning, which I can perceive, to the word totally. Rather it is indicated that this word should be disregarded in order that the section may have a more useful application. In any event Professor Williston's opinion of it seems to be authoritatively rejected in New York.

According to the construction of this section which we are now adopting, on the occurrence of an anticipatory breach by the vendee, the seller must signify what his position is going to be, under penalty of losing his right to recover on the theory of an anticipatory breach. Usually he may reject the suggestion implied from the breach on the other side, that further performance cease, and proceed with the contract; though the Sales Act would seem as a practical matter to greatly limit his right to that alternative in certain cases. See § 145, subd. 3. He may give notice that he will " accept the breach " and hold the buyer for the resulting damages. Presumably, he may do that by signifying his intention other than by formal notice, as by commencing an action to recover damages. But he may not remain silent and subsequently recover as for an anticipatory breach.

My reluctance to adopt this construction of section 146 has been due to the fact that it is in many respects, both theoretically and practically, unsatisfactory.

The most striking feature of this section is that it is intended to confer some right or privilege *on the seller* in the instances of breach by the buyer to which it relates. It is a seller's section. It would not, on its face, appear to have been adopted because it would be helpful to a repudiating buyer. But if its purpose be to prevent the seller from " occupying an equivocal position " (*Wells* v. *Hartford Manilla Co., post*) it will frequently fail to accomplish its purpose; for it will apply only where the seller proceeds on the theory of an anticipatory breach. It will not apply where the seller's intention is to rely on performance by his side, to tender, so far as he may be required, according to the agreement or the acts of the parties, to tender.

As a result of the present interpretation of the section, the application to practical affairs, by lawyer or layman, of the doctrine of anticipatory breach is to become even more confusing and perilous than it has been. In this state, for example, that doctrine has been extended but to a few classes of contracts. Now we are

to have a special rule applying to one class, to contracts within the Sales Act.

This construction of the section will offer one more barrier or technicality in favor of an offending buyer, in certain cases, and against the just claims of the seller whom his breach has damaged. There will be one more pitfall for the honest merchant.

It is to be noted that this construction of the statute will lead to further necessity for construing it. What will be its application where there is but a very short period between the breach and the date for performance? May the seller fail to perform and thereafter give notice within a reasonable time? What will be its application where subdivision 3 of section 145 applies? Where, by reason of that subdivision, both parties must know that the buyer's repudiation will force the seller to " accept the breach " must the notice be given nevertheless? In a jurisdiction where the doctrine of anticipatory breach is not accepted, will this section have no meaning?

But I have decided to concur with the construction adopted by Mr. Justice Mullan. What has already been said in our appellate courts precludes us from adopting the construction of it which its language favors and which Professor Williston ascribes to it. For the same reason, at least, we are precluded from disregarding it entirely. We might say it is not mandatory in its nature; that it was intended to permit a seller to anticipate a change of mind, on the buyer's part, before the time for performance. But that would not be a strong position to take; for, as indicated from the opinion of Mr. Justice Mullan, we are seeking a meaning, outside the language of the section, because there seems to be little accomplished by telling a seller he may " totally rescind." Equally as well could it be said little would be accomplished by telling him he could notify the buyer that the buyer would be taken at his word.

By the Uniform Sales Act it is sought to make the law of sales the same in the various states. To secure uniformity a choice must be made between divergent views as to the law and as to what the law should be. The section under consideration may be considered as adopting, to some extent at least, the doctrine of *Johnstone* v. *Milling*, L. R. 16 Q. B. Div. 460, discussed in *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, where at page 34 we find the following:

" In the last case cited, [that is in *Johnstone* v. *Milling, supra*] Lord Esher gives an interesting summary of the result of the English cases and the theory which underlies them. * * * ' The other party may adopt such renunciation of the contract by so

acting upon it as in effect to declare that he too treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation. He cannot, however, himself proceed with the contract on the footing that it still exists for other purposes, and also treat such renunciation as an immediate breach. If he adopts the renunciation, the contract is at an end except for the purposes of the action for such wrongful renunciation; if he does not wish to do so, he must wait for the arrival of the time when in the ordinary course a cause of action on the contract would arise. He must elect which course he will pursue.'

" These limitations contained in the rule prevent a party to a contract from occupying an equivocal position with respect to it. The contract remains a subsisting one until the parties have mutually elected to treat it otherwise, and have given unmistakable evidence of such an election. A renunciation does not create a breach; there must be an adoption of the renunciation. The renunciation must be so distinct that its purpose is manifest, and so absolute that the intention to no longer abide by the terms of the contract is beyond question. The acquiescence therein must be as patent. There must be no opportunity left to the promisee to thereafter insist upon performance, if that shall prove more advantageous, or sue for damages for a breach, if events shall render that course the more promising."

As we are precluded from giving the section the interpretation naturally flowing from its language, it would appear to be the most logical course to hold that it was intended to make general, in relation to contracts for the sale of goods, the rule just referred to, to the effect that a seller, who would rely on an anticipatory breach, must declare his position.

Were it not for what has been indicated in our higher courts, I would say that the section should be read according to its language; that we may not disregard the emphatic word " totally " because we do not think the seller requires the remedy of true rescission. Some one else might consider such remedy to be worth while and worthy of express statement in a uniform sales statute. A seller desiring certainty of position might feel that he would obtain it by a total or true rescission and that it would be an advantage to have a statutory provision to back him up. Furthermore, a statute is properly interpreted according to its language. It is not usually proper to blue pencil it and distort its meaning because it does not appear very useful. But we seem to be precluded from giving to the language of this statute its natural meaning.

If the interpretation of section 65 of the Uniform Sales Act,

which we are now adopting, is generally accepted, the section should be reworded to make its language conform to its application.

GUY, J., dissents.

Orders reversed.